

FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

MAR – 4 2010

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:                                    DEPUTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CENTURY SURETY COMPANY, an Ohio Corporation, <br> <br> Plaintiff, <br> <br> v. <br> <br> CASINO WEST, INC., a Nevada Corporation, RAFAEL CHAVEZ DUENAS, individually, MARIA OFELIA CHAVEZ, individually and RAFAEL CHAVEZ DUENAS and DIANA OFELIA CHAVEZ, as Co-Special Administrators for the Estate of Juan Pablo Chavez, <br> <br> Defendants. <br>  —————————————————— <br> CASINO WEST, INC., a Nevada Corporation, <br> <br> Counter-Claimant, <br> <br> v. <br> <br> CENTURY SURETY COMPANY, an Ohio Corporation, <br> <br> Counter-Defendant. <br> —————————————————— | 3:07-cv-00636-RCJ-RAM <br> <br> <br> <br> **ORDER** |

Currently before the Court is a Motion for Summary Judgment (#32) filed by Defendant and Counter-Defendant Century Surety Company ("Century"). The Court has considered the motion and related pleadings on file, as well as oral argument heard before the Court on December 11, 2009.

## I. BACKGROUND

This action arises out of a dispute regarding general liability coverage for claims asserted by the heirs and representatives of four individuals who died while inside a motel room on property owned by Casino West, Inc. ("Casino West") in Yerington, Nevada. Autopsies performed by the Washoe County Coroner's Office revealed that the cause of death was acute carbon monoxide poisoning. It was determined that carbon monoxide vapors from the motel's pool heater room had permeated into the decedents' room because the air intake openings had been blocked.

At the time of the deaths, Casino West was the named insured under a comprehensive general liability policy issued to it by Century. The policy contains a so-called "indoor air exclusion" which excludes coverage for "'bodily injury' . . . arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating, pathogenic or allergen qualities or characteristics of indoor air, regardless of cause . . . ." The policy also contains what is known as a "pollution exclusion," which excludes coverage for "'bodily injury' . . . arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' [defined as any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste]."

Century received notice of the incident on April 17, 2006 and retained an attorney to serve as pre-litigation defense counsel for Casino West. On June 16, 2006, Century informed Casino West that it was continuing to handle the case under a reservation of rights to deny coverage. After obtaining copies of the autopsy reports, Century informed Casino West on August 1, 2007 that it would discontinue its voluntary retention of legal counsel because there did not appear to be any coverage for the incident under the policy exclusions. Subsequently, the heirs and representatives of two of the deceased, Juan Pablo Chavez and Donna N. Vega-Robles, commenced actions against Casino West seeking damages for the deaths of Chavez and Vega-Robles.[1] Century denied coverage for the claims asserted in the victims' lawsuits,

---

[1] Casino West and the heirs of the other two victims, Phillip Doll and Veronica Chavez, entered into settlement agreements pursuant to which Casino West paid sums for a release of claims.

1  and commenced this action for declaratory relief as to whether Century's policy contains
2  exclusions that do not cover carbon monoxide exposure.

3       Casino West's answer to Century's complaint for declaratory relief contains a
4  counterclaim against Century for breach of contract, breach of the covenant of good faith and
5  fair dealing, and insurance unfair trade practices.

6                                **II. LEGAL STANDARD**

7       Rule 56 provides that summary judgment shall be granted upon showing that "there is
8  no genuine issue as to any material fact and that the moving party is entitled to judgment as
9  a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine
10  issue of material fact lies with the moving party, and for this purpose, the material considered
11  by the court must be viewed in the light most favorable to the nonmoving party. Adickes v.
12  S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373,
13  1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation
14  and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers
15  Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986); S.EC. v. Seaboard Corp., 677 F.2d 1301,
16  1306 (9th Cir. 1982).

17       If the moving party presents evidence that would call for judgment as a matter of law
18  at trial if left uncontroverted, then the respondent must show by specific facts the existence
19  of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).
20  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party
21  for a jury to return a verdict for that party. If the evidence is merely colorable, or is not
22  significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).
23  "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences
24  of which the evidence is reasonably susceptible; it may not resort to speculation." British
25  Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978); see also Daubert v. Merrell
26  Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes
27  that the scintilla of evidence presented supporting a position is insufficient to allow a
28  reasonable juror to conclude that the position more likely than not is true, the court remains

                                        3

1  free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-
2  moving party's claim of a disputed fact implausible, then that party must come forward with
3  more persuasive evidence than otherwise would be necessary to show there is a genuine
4  issue for trial." Blue Ridge Ins. Co. v. Stanewich, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing
5  Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th
6  Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a
7  motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

### III. ANALYSIS

9  Century seeks summary judgment on its Complaint for Declaratory Relief on the basis
10  that no coverage exists under the Century policy for the claims asserted against Casino West
11  as a result of the victims' deaths. Casino West maintains that the two policy exclusions upon
12  which Century relies in denying coverage are, as a matter of law, inapplicable to the incident
13  out of which this case arises. Alternatively, Casino West argues that factual disputes exist as
14  to the intended scope and application of the exclusions. However, it is clear that the material
15  facts related to the incident that resulted in claims being asserted against Casino West are
16  uncontroverted - four individuals died due to inhalation of carbon monoxide emitted from the
17  motel's pool heater. Application of these undisputed facts to the language of the Century
18  policy is a question of law amenable to summary judgment. See Stanford Ranch, Inc. v.
19  Maryland Cas. Co., 89 F.3d 618, 624 (9th Cir. 1996) ("The interpretation of an insurance
20  policy, as applied to undisputed facts, is a question of law."); see also Estate of Delmue v.
21  Allstate Ins. Co., 936 P.2d 326, 328 (Nev. 1997) (the interpretation of an insurance policy is
22  a question of law if neither party disputes any material fact).

23  Because this case is filed under diversity jurisdiction, Nevada law governs the Court's
24  interpretation of the insurance policy. See Gary Day Constr. Co., Inc. v. Clarendon Am. Ins.
25  Co., 459 F.Supp.2d 1039, 1044 (D.Nev. 2006) (citing Erie Railroad v. Tompkins, 304 U.S. 64
26  (1938)). Under Nevada law, coverage under an insurance policy must be construed broadly,
27  while limitations and exclusions are to be construed narrowly. Cranmore v. Unumprovident
28  Corp., 430 F.Supp.2d 1143, 1149 (D.Nev. 2006) (interpreting Nevada law). Policies are

construed from the perspective of a layman and, absent ambiguity, terms are to be given their plain and ordinary meaning. <u>McDaniel v. Sierra Health and Life Ins. Co., Inc.</u>, 53 P.3d 904, 906 (Nev. 2002). An ambiguity exists when a policy provision is subject to two or more reasonable interpretations. <u>Grand Hotel Gift Shop v. Granite State Ins. Co.</u>, 839 P.2d 599, 604 (Nev. 1992). If the ambiguity cannot be resolved, the contract is to be construed against the insurer and in favor of the insured. <u>Estate of Delmue</u>, 936 P.2d at 328. However, a court should neither rewrite an otherwise unambiguous contract provision nor struggle to find ambiguity where none exists. <u>United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.</u>, 99 P.3d 1153, 1157 (Nev. 2004); <u>Farmers Ins. Group v. Stonik</u>, 867 P.2d 389, 391 (Nev. 1994).

**A.    The Total Pollution Exclusion is Ambiguous and Therefore Does Not Preclude Coverage**

Century maintains that the pollution exclusion unambiguously excludes coverage in this case because it applies to pollutants, including indoor pollution such as carbon monoxide. Century relies heavily upon the fact that its pollution exclusion contains an exception for bodily injury "sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building." According to Century, this exception to the exclusion indicates an intent to apply the pollution exclusion to all indoor air quality issues *except* when the fumes are generated by the building's heater. Casino West argues that the pollution exclusion is ambiguous when applied to carbon monoxide exposure because it is susceptible to more than one reasonable interpretation and notes the conflicting interpretations of other courts as evidence that the exclusion is ambiguous.

Nevada courts have not examined whether carbon monoxide is a pollutant under a pollution exclusion like the one contained in the Century policy, and case law throughout the country demonstrates that this is not a clear-cut issue. See <u>Apana v. TIG Inc. Co.</u>, 574 F.3d 679, 680 (9th Cir. 2009) (describing the scope of the pollution exclusion found in most general liability policies as "one of the most hotly litigated insurance coverage questions" to arise over the past three decades). Because so many courts have addressed the issue, several approaches have emerged. A number of courts limit the exclusion to situations involving

5

traditional environmental pollution, either because they find the terms of the exclusion to be ambiguous or because they find the exclusion contradicts policyholders' reasonable expectations.  See, e.g., Nautilus Ins. Co. v. Jabar, 188 F.3d 27, 30-31 (1st Cir. 1999) (applying Maine law) (pollution exclusion was ambiguous as applied to claim for injury arising from exposure to fumes from roofing products because reasonable person would understand exclusion as applying only to environmental pollution); Regional Bank of Colorado, N.A. v. St. Paul Fire and Marine Ins. Co., 35 F.3d 494 (10th Cir. 1994) (applying Colorado law) (ordinary policyholder would not reasonably characterize carbon monoxide emitted from a malfunctioning heater as a "pollutant" excluded by a pollution exclusion); Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47 F.3d 34, 36-37 (2d Cir.1995) (applying New York law) (exclusion clause was ambiguous as applied to carbon monoxide poisoning caused by faulty ventilation system).

Some courts have held that a pollution exclusion bars coverage for all injuries caused by the release of contaminants, even where the contaminant is dispersed into a confined or indoor area.  See, e.g., Cont'l Cas. Co. v. Advance Terrazzo & Tile Co., Inc., 462 F.3d 1002 (8th Cir. 2006) (applying Minnesota law) (pollution exclusion unambiguously applied to bar coverage for injuries from exposure to carbon monoxide fumes); Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997, 1004-05 (4th Cir. 1998) (applying Maryland law) (exclusion unambiguously applied to injuries resulting from carbon monoxide poisoning); Technical Coating Applicators, Inc. v. United States Fidelity and Guar. Co., 157 F.3d 843, 846 (11th Cir. 1998) (applying Florida law) (pollution exclusion applied to a claim for exposure to toxic vapors from roofing materials).  Other courts have reasoned that the pollution exclusion clause must be ambiguous if so many courts have given it conflicting interpretations.  See, e.g., Meridian Mut. Ins. Co. v. Kellman, 197 F.3d 1178, 1183 (6th Cir.1999) (finding the exclusion ambiguous in light of "the disarray that characterize[s] this area of law").

While a reasonable person of ordinary intelligence might understand carbon monoxide is a pollutant when emitted in some settings, an ordinary policyholder may not reasonably characterize carbon monoxide emitted from a motel pool heater as pollution.  Additionally, a

6

1  reasonable policyholder might not view the exception regarding fumes from the building's

2  heater as an indication that all other possible types of indoor fumes would be excluded as

3  "pollutants."   Because the pollution exclusion in this case is subject to more than one

4  reasonable interpretation, the Court finds that the exclusion creates an ambiguity.  See

5  Federal Ins. Co. v. American Hardware Mut. Ins. Co., 184 P.3d 390, 393 (Nev. 2008) (citing

6  Margrave v. Dermody Properties, 878 P.2d 291, 293 (Nev. 1994) (explaining that a "contract

7  is ambiguous if it is reasonably susceptible to more than one interpretation")).  Therefore, the

8  pollution exclusion clause is construed against Century and in favor of coverage.  See Estate

9  of Delmue, 936 P.2d at 328.  Century's motion for summary judgment is denied on this basis.

10  **B.     The Indoor Air Exclusion is Ambiguous and Therefore Does Not Preclude
11         Coverage**

12         Unlike the pollution exclusion, the indoor air exclusion uniquely appears in Century's

policies and therefore has not repeatedly been the subject of litigation.   The indoor air
13
exclusion excludes coverage for any injury "arising out of, caused by, or alleging to be
14
contributed to in any way by any toxic, hazardous, noxious, irritating, pathogenic or allergen
15
qualities or characteristics of indoor air, regardless of cause . . . ."  Century argues that this
16
exclusion unambiguously applies to the claims in this case because carbon monoxide can be
17
considered a toxic, hazardous and noxious characteristic of indoor air.  Casino West argues
18
that this exclusion is also ambiguous because it is susceptible to more than one interpretation.
19
Specifically, Casino West maintains that the exclusion should be applied only to injuries
20
suffered from exposure to toxic indoor air caused by the insured's ongoing operation, and not
21
a sudden accidental incident such as the one present in this case.  Casino West further
22
maintains that the exclusion is intended to apply only to situations involving toxic indoor air
23
caused from the development of mold, fungi or some other degradation of a structure.
24
       The Court perceives an ambiguity in the language of the indoor air exclusion.  It is
25
reasonable to consider carbon monoxide a "toxic, hazardous, noxious and irritating"
26
characteristic of indoor air, as those terms are used in the exclusion.  However, the exclusion
27
can also reasonably be construed as applying only to ongoing air quality issues that result from
28

7

1   biological organisms, asbestos or silica.   Because  the  Court  finds the exclusion to be

2   ambiguous, it must be construed against Century.  See Estate of Delmue, 936 P.2d at 328.

3    Accordingly, summary judgment cannot be granted in Century's favor on this issue.

4   **C.   Casino West's Counterclaims**

5        1.   Breach of Contract

6        In its counterclaim, Casino West alleges a breach of contract by Century for both a duty

7   to defend and a duty to indemnify Casino West against all claims arising from the April 16,

8   2006 incident.  Century moves for summary judgment on the issue of whether it owes a duty

9   to defend or indemnify Casino West as to the victims' claims, on the basis that the claims are

10  excluded from coverage.  An insured has a duty to defend an insured "whenever it ascertains

11  facts which give rise to the potential of liability under the policy."  See United Nat'l Ins. Co. v.

12  Frontier Ins. Co., Inc., 99 P.3d 1153, 1158 (Nev. 2004).  The duty to indemnify arises when

13  an insured "becomes legally obligated to pay damages in the underlying action that gives rise

14  to a claim under the policy."  Id.  In other words, for an insurer to be obligated to indemnify an

15  insured, "the insured's activity and the resulting loss or damage [must] actually fall within the

16  policy's coverage."  Id.

17       Because the Court concludes that neither the indoor air exclusion and/or the pollution

18  exclusion precludes coverage in this case, Century cannot argue that it had no duty to defend

19  or indemnify based on exclusion from coverage.  Century has failed to present any other

20  argument or evidence in support of its request for summary judgment on this claim.  In light

21  of Century's failure to carry its initial burden of production by submitting evidence showing the

22  absence of any genuine issue of material fact, Casino West has no obligation to produce

23  anything in response.  High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d

24  563, 574 (9th Cir. 1990).  Accordingly, Century's motion for summary judgment on this claim

25  is denied.

26       2.   Bad Faith

27       In Nevada, bad faith consists of (1) an insurer's denial of (or refusal to pay) an insured's

28  claim (2) without any reasonable basis and (3) the insurer's knowledge or awareness of the

1  lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the
2  unreasonableness of the denial.  Garcia v. Dawahare, 608 F.Supp.2d 1228, 1234 (D.Nev.
3  2008).  The Nevada Supreme Court has defined bad faith as "an actual or implied awareness
4  of the absence of a reasonable basis for denying benefits of the [insurance] policy." Allstate
5  Ins. Co. v. Miller, 212 P.3d 318, 324 (Nev. 2009) (quoting Am. Excess Ins. Co. v. MGM, 729
6  P.2d 1352, 1354-55 (Nev. 1986)).  Thus, the Ninth Circuit has held that a bad faith claim
7  should be dismissed on summary judgment "if the defendant demonstrates that there was a
8  genuine dispute as to coverage." Garcia, 608 F.Supp.2d at 1234 (citing Feldman v. Allstate
9  Ins. Co., 322 F.3d 660 (9th Cir. 2003)).  A genuine dispute may concern either a reasonable
10  factual dispute or unsettled areas of insurance law.  Id.

11        The Court has concluded that Casino West's claim was covered by Century's policy,
12  and the question of whether Century had a reasonable basis to deny the claim raises genuine
13  issues of material fact that preclude summary judgment on its bad faith claim.

14        3.    Violation of NRS 686A.310

15        Century seeks summary judgment dismissal of Casino West's counterclaim alleging a
16  violation of Nev. Rev. Stat. § 686A.310, Nevada's Unfair Claim Practices statute.  The statute
17  expressly grants insureds a private right of action against insurance companies that violate this
18  statute.  See Pioneer Chlor Alkali Co., Inc. v. National Union Fire Ins. Co. of Pittsburgh,
19  Pennsylvania, 863 F.Supp. 1237, 1241 (D.Nev. 1994) (noting that "the provisions of NRS §
20  686A.310 address the manner in which an insurer handles an insured's claim whether or not
21  the claim is denied").

22        Century presents evidence regarding how it handled Casino West's claim and
23  communicated with Casino West with regard to its coverage decisions.  However, it is not clear
24  from the record whether, as alleged by Casino West, Century misrepresented pertinent facts
25  and insurance policy provisions relating to the request for coverage, or failed to implement
26  reasonable standards for the prompt investigation and processing of claims.  Viewing the
27  evidence in the light most favorable to the non-moving party, the Court finds that genuine
28  ///

9

issues of material fact exist regarding whether Century acted in bad faith.  Accordingly, summary judgment cannot be granted on this claim.

      4.    Punitive Damages

      Under Nevada law, punitive damages may be awarded when the plaintiff proves fraud, malice, or oppression by clear and convincing evidence. Winchell v. Schiff, 193 P.3d 946, 952 (Nev. 2008) (citing NRS 42.005).  The court has discretion to determine whether the party's conduct merits punitive damages as a matter of law.  Id. (Citing Countrywide Home Loans v. Thitchener, 192 P.3d 243 (Nev. 2008)).

      Whether Century acted with malice or committed oppression or fraud is somewhat dependent on a determination of whether Century acted in bad faith or violated NRS 686A.310 in refusing to pay Casino West's claim.  Because material issues of fact exist as to whether Century acted in bad faith, the Court cannot say as a matter of law that Century did not act with malice, oppression or fraud.  Therefore, summary judgment on the punitive damages claim is not appropriate.

## IV. CONCLUSION

      IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#32) DENIED.

      DATED: This 4th day of March, 2010.


UNITED STATES DISTRICT JUDGE

10